**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

<table>
<tr><td>WORLD INSPECTION NETWORK<br>INTERNATIONAL LLC,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td style="text-align:center">Plaintiff,</td><td>)<br>)</td><td></td></tr>
<tr><td style="text-align:center">v.</td><td>)<br>)</td><td>1:24cv146</td></tr>
<tr><td>J. STROUT HOLDINGS, LLC, et al.,</td><td>)<br>)</td><td></td></tr>
<tr><td style="text-align:center">Defendants.</td><td>)<br>)</td><td></td></tr>
</table>

<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

This case comes before the undersigned United States Magistrate Judge for a recommendation on the "Motion to Dismiss or, in the Alternative, to Transfer" (Docket Entry 19 (all-cap font and emphasis omitted)) (the "instant Motion")[1] filed by "Defendants, J. Strout Holdings, LLC (['Strout Holdings']), J. Strout Group, LLC [d/b/a True North Inspection Services ('True North')], Jonathan Strout, and Jamie Strout (collectively, [the] 'Defendants')" (<u>id.</u> at 1 (all-cap font omitted)).[2]   For the reasons that follow, the

---

[1] Although courts "routinely treat [venue transfer] motions as nondispositive," <u>DietGoal Innovations LLC v. Wegmans Food Markets, Inc.</u>, 993 F. Supp. 2d 594, 599 (E.D. Va. 2013), and thus as subject to resolution by magistrate judges, <u>see</u> <u>id.</u> at 598-99, the undersigned elects to enter a recommendation rather than an order on the Motion given that Defendants purport to seek dismissal of this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).

[2] Docket Entry page citations utilize the CM/ECF footer's pagination.

Court should grant in part and should deny in part the instant Motion.

## BACKGROUND

Asserting that Defendants, residents of North Carolina (see Docket Entry 1 (the "Complaint") at 2-3), "are acting in concert to violate the post-termination non-compete under Strout Holdings' franchise agreement [(Docket Entry 4-1) (the 'Franchise Agreement' or 'Agreement')] with [World Inspection Network International LLC d/b/a WIN Home Inspection (the 'Plaintiff' or 'WIN')] while using WIN's confidential information and trademarks" (Docket Entry 1 at 1),[3] Plaintiff sued Defendants for, inter alia, breach of contract, trade secret misappropriation, and trademark infringement (see, e.g., id. at 22-28). Contemporaneously with filing the Complaint, Plaintiff moved for a preliminary injunction against Defendants, seeking to enjoin "Defendants' concerted and ongoing violation of Strout Holdings post-termination obligations under [the F]ranchise [A]greement, disclosure and misappropriation of WIN's confidential information and trade secrets, and infringement of WIN's

---

3    Per the Complaint, Plaintiff "is a Delaware limited liability company with its principal place of business in Chicago, Illinois," whose "ultimate members are citizens of California, Georgia, Illinois, India, Massachusetts, New Jersey, Washington, Texas, and the United Kingdom. WIN is the successor to substantially all of World Inspection Network International, Inc.'s assets." (Id. at 2.) "World Inspection Network International, Inc., an Alabama corporation (['WINI' or the ]'Franchisor')," entered into the Franchise Agreement with Strout Holdings (the "Franchisee"). (Docket Entry 4-1 at 7.) Jonathan Strout personally guaranteed the Franchise Agreement. (See id. at 63-66.)

trademarks." (Docket Entry 3 (the "Preliminary Injunction Motion") at 1; see also id. at 3-5 (requesting order "[e]njoining Defendants from [(i)] further violating the Franchise Agreement's post-termination obligations, specifically," inter alia, by complying with various noncompetition obligations, returning confidential information, and transferring "all telephone numbers, domain names, and other social media accounts used by Strout Holdings and the Strouts in connection with the WIN Home Inspection System," (ii) "further infringing upon the WIN Home Inspection Brands," and (iii) "further disclosing or using WIN's Confidential Information and trade secrets").) Defendants filed a response in opposition to the Preliminary Injunction Motion, arguing in part that WIN could not show a likelihood of success on its claims. (See Docket Entry 15.)

Defendants subsequently filed the instant Motion, seeking either dismissal of the Complaint or transfer of this action to the "Northern District of Alabama" (Docket Entry 19 at 2) on the grounds that the Franchise Agreement contains "mandatory forum selection provisions mandating that all disputes between the parties be litigated exclusively in Alabama" (id. at 1).[4]

---

4 In addition to those venue-related contentions, the instant Motion requests dismissal of the Complaint and/or specific claims therein pursuant to Federal Rule of Civil Procedure 12(b)(6). (See id. at 1.) Because "the Court [should] grant the [instant] Motion as to [Defendants'] request to transfer the case, it need not and [should] not address [those] arguments for dismissal of the Complaint," Hunt v. Meta/Facebook, No. CV 23-3264, 2024 WL 1096758,

Plaintiff opposes the instant Motion, contending, inter alia, that the Franchise Agreement contains only a permissive forum-selection clause and that, "[e]ven if the Court held the Franchise Agreement imposed a mandatory forum-selection clause, enforcing it would be unreasonable" (Docket Entry 21 at 13).  (See id. at 2-15.)

As relevant to the instant Motion, the Franchise Agreement provides:

XII. DISPUTE RESOLUTION PROCEDURES

12.01 <u>Binding Dispute Resolution</u>.

(a) Except as specifically modified by Sections 12.02 and 12.03 hereof and specifically excepting actions by Franchisor to collect sums due and payable by Franchisee under this Agreement, any controversy or claim arising out of or relating to this Agreement, or any breach of it, including without limitation, any claim that this Agreement or any part of it is invalid, illegal, voidable or void, shall be subject to the alternative dispute resolution provisions set forth in Section 12.02. Any such controversy or claim not brought within one year after the act or omission giving rise to it shall be deemed waived.

12.02 <u>Alternative Dispute Resolution</u>.

(a) The disputing party shall give the other party written notice (the "Notice") of the dispute within thirty (30) days of becoming aware of the existence of the dispute.  The Notice shall describe in reasonable detail the dispute and shall name a designee to participate in the meeting described in this section.  Within fifteen (15) days of receipt of the Notice, the other party shall appoint a designee to meet and confer in an attempt to resolve the dispute.  The failure of either party to appoint a designee or to present that designee

at *3 (D. Md. Mar. 13, 2024).

4

for a meeting shall be considered a material breach
of this Agreement.  The designees of Franchisor and
Franchisee shall meet at WINI's corporate offices
at a time mutually acceptable to them to attempt to
settle the dispute in good faith or, upon mutual
agreement, conduct such meeting by conference
telephone. . . .  In the event that no resolution
of the dispute is reached within thirty (30) days
following the meeting, the dispute shall be
submitted for a non-binding mediation with a
mediator selected from a list of mediators to be
obtained from the Center for Public Resources
Institute for Dispute Resolution . . . .  The costs
and expenses of the mediation process shall be
shared equally by Franchisor and Franchisee.

(b) The mediator shall promptly hear presentations
from Franchisor and Franchisee in such manner and
at such times and locations as shall be determined
by the mediator. . . .  No legal proceedings for
the resolution of the dispute shall be commenced by
Franchisor or Franchisee until the conclusion of
this mediation, which shall in no event extend past
one hundred and twenty (120) days from the receipt
of the Notice.  <u>Upon conclusion of the mediation,
each of Franchisor and Franchisee shall have all
rights and remedies available to it at law or in
equity; provided, however, that to the fullest
extent permitted by law, Franchisor and Franchisee
hereby waive their respective rights to trial by
jury in any suit, action or proceeding</u> against
Franchisee, or Franchisor, as the case may be,
<u>which shall be filed in the courts identified in
Section 12.02(f) below</u>.

(c) The periods set forth in this Section 12.02
maybe extended or shortened by mutual agreement of
the parties. In no event shall a party who has
refused or failed to participate in the dispute
resolution process described in this Section 12.02
be permitted to commence legal proceedings without
first complying with the provisions of this Section
12.02.

(d) The parties hereto agree that notwithstanding,
and in addition to, the rights and remedies
available hereunder, each of Franchisor, on the one
hand, and Franchisee, on the other hand, <u>reserves</u>

the right to seek and obtain temporary restraining
orders or other emergency temporary or preliminary
equitable injunctive relief from the courts of the
state of Alabama or the federal courts situated in
the Northeastern[5] District of Alabama, to preserve
the *status quo* by enjoining or restraining a party
hereto pending mediation hereunder or to compel
mediation as provided herein, and the parties
hereto acknowledge and agree to the right to seek
such relief.   The parties hereto expressly agree
and acknowledge that seeking relief from the courts
as provided in this Section 12.02 shall not be
deemed a waiver of any party's right to mediate nor
shall the existence or exercise of such right be
deemed to be an adequate remedy at law in
connection therewith.

(e) Each party shall bear its own attorneys' fees
and expenses and the fees and expenses of other
experts or professionals utilized by such party in
connection with the mediation provided for herein.

(f) Each of the parties hereto (including those
persons executing the Personal Guaranty) hereby

---

5   Alabama contains the Northern, Middle, and Southern
Districts.   See 28 U.S.C. § 81.   The Northern District contains,
inter alia, the Northeastern Division.   See 28 U.S.C. § 81(a)(2);
see also id. § 81(b) & (c) (reflecting that the Middle and Southern
Districts contain "Northern" rather than "Northeastern" Divisions).
The parties do not explicitly address the Franchise Agreement's
misidentification of the relevant Alabama District Court, although
Defendants do request transfer to the "Northern District of
Alabama" (e.g., Docket Entry 19 at 2) rather than the
"Northeastern" District.   (See Docket Entries 19-22.)   Under the
circumstances, including that Plaintiff neither contests
Defendants' equation of the "Northeastern District of Alabama" with
the "Northern District of Alabama" nor argues that the
misidentification somehow invalidates the forum-selection clause or
renders transfer unreasonable (see Docket Entry 21), the Court
should treat the Franchise Agreement's reference to the
"Northeastern" rather than "Northern" District of Alabama as a mere
typographical error without independent legal significance.   See
Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir.
2017) (explaining that "[a] party waives an argument by failing to
present it in its opening brief or by failing to develop its
argument" (brackets and internal quotation marks omitted)).

irrevocably consents and submits to the <u>exclusive</u>
personal jurisdiction of United States District
Court for the Northeastern District of Alabama and
the courts of the state of Alabama over any suit or
action to compel mediation in accordance with the
provisions of this Section 12 between Franchisor
and Franchisee or over any suit or action brought
following unsuccessful mediation as provided in
Section 12.02(b), and irrevocably agrees that <u>venue
is proper</u> in such courts for any such suit or
action and that all claims with respect thereto may
be heard and determined in <u>either such court</u>.
Service of process in any such suit or action may
be made in the manner in this Agreement set forth
for the giving of notices and the same shall
constitute valid personal service for all purposes,
each party hereby waiving personal service by other
means.

12.03 <u>Injunctive or Extraordinary Remedies</u>.

(a) This Agreement shall not limit Franchisor from
bringing any action in any court of competent
jurisdiction for injunctive or other extraordinary
relief, without the need to post a bond (and if
such bond is required by a court of competent
jurisdiction, Franchisor and Franchisee agree that
the sum of $5,000 shall be sufficient bond for such
purposes), as Franchisor deems necessary or
appropriate to compel Franchisee to comply with its
obligations hereunder: (i) respecting the use or
display of the WIN Home Inspection Brands or to
otherwise protect the WIN Home Inspection Brands;
and (ii) respecting the in-term and post-term
non-competition provisions of this Agreement.
Franchisee acknowledges that it is one of a number
of licensed franchisees using Franchisor's WIN Home
Inspection Brands and that failure on its part to
comply fully with any of the terms of this
Agreement respecting use of the WIN Home Inspection
Brands could cause irreparable damage to Franchisor
or other licensed franchisees of Franchisor.
Therefore, Franchisor shall have the immediate
right to seek a preliminary order or injunction
prohibiting the use or display of the WIN Home
Inspection Brands during the pendency of all
mediation or other proceedings. This covenant
shall be independent, severable and enforceable

7

notwithstanding any other rights or remedies that Franchisor may have.

(b) Each of the parties hereto (including those persons executing the Personal Guaranty) hereby irrevocably consents and submits to the <u>exclusive</u> personal jurisdiction of United States District Court for the Northeastern District of Alabama and the courts of the state of Alabama over any suit or action brought as permitted by the provisions of this Section 12.03 between Franchisor and Franchisee, and irrevocably agrees that <u>venue is proper in such courts</u> for any such suit or action and that all claims with respect thereto may be heard and determined in <u>either such court</u>. Service of process in any such suit or action may be made in the manner in this Agreement set forth for the giving of notices and the same shall constitute valid personal service for all purposes, each party hereby waiving personal service by other means.

(c) To the fullest extent permitted by law, each of the parties hereto (including those persons executing the Personal Guaranty) hereby waive their respective rights to a trial by jury in any matter that is brought in any court. The parties acknowledge and agree that the rights of WIN Home Inspection Brands and the WIN Home Inspection System and the enforcement of the in-term and post-term noncompetition agreements of Franchisee are of a specialized and unique character and that immediate and irreparable damage will result to Franchisor if Franchisee fails or refuses to perform its obligations under this Agreement and, notwithstanding any election by Franchisor to claim damages from Franchisee as a result of any such failure or refusal, Franchisor may, in addition to any other remedies and damages available, seek an injunction in a court of competent jurisdiction to restrain any such failure or refusal.

(Docket Entry 4-1 at 34-37 (certain emphasis added).) The Franchise Agreement further provides that, "[t]o the extent applicable, the Lanham Act governs any issue involving the WIN Home Inspection Brands," and "[a]ll other issues involving th[e

Franchise] Agreement and the legal relations among the parties
[t]hereto shall be governed by and construed in accordance with the
laws of the State of Alabama." (Id. at 44 (citation omitted); see
also id. at 45 (providing that Franchise Agreement "shall be deemed
a contract made in the state of Alabama," where "Franchisor" had
its office (all-cap font omitted)).)

## **DISCUSSION**

### **I. Preliminary Matters**

Defendants purport to bring the instant Motion pursuant to
Rule 12(b)(3) of the Federal Rules of Civil Procedure (the
"Rules"). (See Docket Entry 19 at 1.) According to Defendants'
memorandum supporting the instant Motion, "Plaintiff's Complaint
should be dismissed pursuant to Rule 12(b)(3) because the Franchise
Agreement at issue contains an enforceable, mandatory forum
selection clause naming the United States District Court for the
Northern District of Alabama as the exclusive jurisdiction for
litigating disputes arising under the Agreement." (Docket Entry 20
at 4.) This argument lacks merit. See, e.g., Atlantic Marine
Constr. Co. v. United States Dist. Ct. for W. Dist. of Tex., 571
U.S. 49, 55 (2013) ("Rule 12(b)(3) allow[s] dismissal only when
venue is . . . 'improper.' Whether venue is . . . 'improper'
depends exclusively on whether the court in which the case was
brought satisfies the requirements of federal venue laws, and those
provisions say nothing about a forum-selection clause.").

9

As the Supreme Court has explained, "Rule 12(b)(3) states that a party may move to dismiss a case for 'improper venue'" and "therefore authorize[s] dismissal only when venue is . . . 'improper' in the forum in which it was brought." <u>Id.</u> "This question — whether venue is . . . 'improper' — is generally governed by 28 U.S.C. § 1391." <u>Id.</u> Section 1391 authorizes a civil action in, as relevant here, "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

"When venue is challenged, the court must determine whether the case falls within one of the [specified] categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." <u>Atlantic Marine</u>, 571 U.S. at 56. "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." <u>Id.</u> "As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." <u>Id.</u>

Defendants do not contend that "venue is improper," <u>id.</u>, under Section 1391; instead, notwithstanding their repeated reliance on <u>Atlantic Marine</u>, including their recognition that "[t]he Supreme Court in *Atlantic Marine* held that transfer pursuant to § 1404(a) is the prescribed enforcement mechanism of a forum-selection clause

that 'points to a particular federal district'" (Docket Entry 20 at 3 (brackets omitted); see also id. at 3-4 (relying on Atlantic Marine for relevant "Legal Standard[s]" (emphasis omitted))), Defendants rest their Rule 12(b)(3) dismissal arguments entirely on the existence of the forum-selection clause, in contravention of Atlantic Marine. (See Docket Entries 19, 20, 22.) Moreover, the Complaint alleges — and Defendants have not disputed (see, e.g., Docket Entries 19, 20, 22) — that all Defendants reside in North Carolina and at least three Defendants reside in Sanford, North Carolina (see Docket Entry 1 at 2-3), within the Middle District of North Carolina, see 28 U.S.C. § 113(b) (providing that the Middle District encompasses Lee County, North Carolina). Therefore, pursuant to Section 1391, "venue is proper," Atlantic Marine, 571 U.S. at 56, in this Court, necessitating denial of Defendants' Rule 12(b)(3) dismissal request. See id. at 55-56.

In addition, the instant Motion requests an award of attorneys' fees. (See Docket Entry 19 at 2.) Defendants reiterate this request in the conclusion of their memorandum in support of the instant Motion (see Docket Entry 20 at 19), but provide no argument regarding their alleged entitlement to such fees anywhere in that memorandum (see id. at 1-19). Their reply in support of the instant Motion likewise omits any such argument (see Docket Entry 22 at 1-7), although it clarifies in its concluding paragraph that Defendants seek such expense-shifting "pursuant to Sections

13.01(d) and 13.05 of the Franchise Agreement" (id. at 7).
Defendants therefore waived any arguments regarding their alleged
entitlement to such fees. See Grayson O Co. v. Agadir Int'l LLC,
856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by
failing to present it in its opening brief or by failing to develop
its argument — even if its brief takes a passing shot at the
issue." (brackets and internal quotation marks omitted)).  In
addition, the cited provisions of the Franchise Agreement do not
authorize the requested expense-shifting. (See Docket Entry 4-1 at
37-40.)  Accordingly, the Court should deny Defendants' request for
expense-shifting.

## II. Transfer Request

## A. Relevant Standards

"For the convenience of parties and witnesses, in the interest
of justice, a district court may transfer any civil action to any
other district or division where it might have been brought or to
any district or division to which all parties have consented."  28
U.S.C. § 1404(a).  Moreover, "when parties to a contract confer
jurisdiction and venue on a particular court, as a general matter
federal common law directs courts to favor enforcement of the
agreement, so long as it is not unreasonable." Albemarle Corp. v.
AstraZeneca UK Ltd., 628 F.3d 643, 649 (4th Cir. 2010).[6]  "When

_____

    6    "[B]ecause forum selection clauses implicate the
appropriate venue of a court," and "[t]he appropriate venue of an
action is a procedural matter that is governed by federal rule and

construing forum selection clauses, federal courts have found dispositive the particular language of the clause and whether it authorizes another forum as an *alternative* to the forum of the litigation or whether it makes the designated forum *exclusive*." Id. at 650 (emphasis in original).   "A general maxim in interpreting forum selection clauses is that an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion."   Id. (emphasis in original) (internal quotation marks omitted).

"A forum-selection clause can be either mandatory — providing the designated forum with exclusive jurisdiction over any disputes — or permissive — providing the designated forum with jurisdiction over the parties, but not necessarily exclusive jurisdiction." Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008).   "As a general rule, when a jurisdiction is specified in a provision of contract, the provision generally will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive, such as 'exclusive,' 'sole,' or 'only.'" Scotland Mem'l Hosp., Inc. v. Integrated Informatics, Inc., No. 1:02cv796, 2003 WL 151852, at *4 (M.D.N.C. Jan. 8, 2003) (Bullock,

statutes," the Court "appl[ies] federal common law favoring the enforcement of forum selection clauses when interpreting contracts that contain forum selection clauses."   Id. at 650.

J.) (emphasis and certain internal quotation marks omitted).  "The language of each forum-selection clause is important in that a crucial distinction between mandatory and permissive clauses is whether the clause only *mentions* jurisdiction or *specifically refers* to venue."  Id. (brackets and internal quotation marks omitted) (emphasis in original).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations."  Atlantic Marine, 571 U.S. at 62.[7]  "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  Id. at 62-63

_____

7  In this analysis:

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  The Court must also give some weight to the plaintiffs' choice of forum.

Id. at 62 n.6 (citations omitted) (brackets in original).

14

(quoting 28 U.S.C. § 1404(a)).  "The calculus changes, however, when the parties' contract contains a valid [mandatory[8]] forum-selection clause, which represents the parties' agreement as to the most proper forum." Id. at 63 (internal quotation marks omitted).  "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Id. (internal quotation marks omitted).  "For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." Id. (brackets and certain internal quotation marks omitted).  "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." Id.

"First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id.; see also id. at 64 ("[T]he plaintiff must bear the burden of showing

---

8  "Although the *Atlantic Marine* Court did not expressly hold that only a mandatory forum selection clause modifies the *forum non conveniens* framework, the [Supreme] Court's rationale makes clear that this is so." BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 471 (4th Cir. 2018), as amended (Mar. 27, 2018).

why the court should not transfer the case to the forum to which the parties agreed.").   The party resisting a forum-selection clause "bear[s] a heavy burden of proof," <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 17 (1972); <u>accord</u> <u>id.</u> at 19, and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching," <u>id.</u> at 15.

"Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." <u>Atlantic Marine</u>, 571 U.S. at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." <u>Id.</u>  "A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."   <u>Id.</u>   "As a consequence, a district court may consider arguments about public-interest factors only." <u>Id.</u>  "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."   <u>Id.</u>   "Although it is conceivable in a particular case that the district court would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, such cases will not be common."   <u>Id.</u> (citation and internal quotation marks omitted).

"Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations." Id.; see also id. at 64-65 (identifying "a court's familiarity with the law that must govern the action as a potential factor" in transfer analysis (internal quotation marks omitted)).

In sum:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.  In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

Id. at 66.

## **B. Analysis**

The parties dispute whether Section 12.03(b) qualifies as a mandatory or permissive forum-selection clause.  (Compare, e.g., Docket Entry 20 at 4-6, with Docket Entry 21 at 11.)  Under Section 12.03(b):

> Each of the parties hereto (including those persons executing the Personal Guaranty) hereby irrevocably consents and submits to the exclusive personal jurisdiction of United States District Court for the Northeastern District of Alabama and the courts of the state of Alabama over any suit or action brought as

> permitted by the provisions of this Section 12.03 between
> Franchisor and Franchisee, and irrevocably agrees that
> venue is proper in such courts for any such suit or
> action and that all claims with respect thereto may be
> heard and determined in either such court.

(Docket Entry 4-1 at 37 (emphasis added).)   In other words, the forum-selection clause provides for "exclusive personal jurisdiction" in certain Alabama federal and state courts and specifies that "venue is proper in such courts" for proceedings under Section 12.03 of the Franchise Agreement.   (Id.)[9] Reiterating the selection of Alabama state and federal courts, it emphasizes that "either such court" can adjudicate actions brought pursuant to Section 12.03.   (Id. (emphasis added).)

Plaintiff does not seriously dispute that a forum-selection clause's reference to "exclusive" jurisdiction ordinarily connotes a mandatory forum-selection clause.   (See Docket Entry 21.) Instead, Plaintiff maintains:

> The Franchise Agreement's forum-selection clause is
> likewise permissive.  Its use of the term "exclusive" in

---

9   Given that the forum-selection clause provides for exclusive jurisdiction in specific Alabama federal and state courts, the Court should reject Plaintiff's contention that the forum-selection clause

> is permissive because it merely provides that each party
> "consents and submits" to the jurisdiction of Alabama
> courts, "agrees that venue is proper in such courts,"
> does not use mandatory language requiring that venue
> "shall" or "must" lie in such courts, and instead
> concludes that "all claims with respect thereto *may* be
> heard and determined in either such court."

(Docket Entry 21 at 11 (emphasis in original).)

> reference to Alabama courts is insufficient to make it
> mandatory when read in the context of Section 12.03 as a
> whole, namely, WIN's unrestricted right to seek
> injunctive relief in "any court of competent
> jurisdiction." Under Alabama law, "the intent of the
> contracting parties is discerned from the whole of the
> contract." *Homes Legend, Inc. v. McCollough*, 776 So. 2d
> 741, 746 (Ala. 2000).

(Docket Entry 21 at 12.)[10]

Contrary to Plaintiff's contentions, however, Section 12.03(a)'s reference to "any court of competent jurisdiction" comports with the limitation in Section 12.03(b) of "such courts" to specified Alabama federal and state courts. (Docket Entry 4-1 at 36-37; see also id. at 36 ("reserv[ing] the right to seek and obtain temporary restraining orders or other emergency temporary or preliminary equitable injunctive relief from the courts of the state of Alabama or the federal courts situated in the Northeastern District of Alabama, to preserve the *status quo* by enjoining . . . a party hereto pending mediation").) In other words, the Franchise Agreement authorizes Plaintiff to pursue injunctive relief under Section 12.03 in either one of Alabama's three federal courts or any Alabama state court, as Plaintiff prefers, without undergoing the pre-litigation dispute resolution process (and without posting a bond or by posting a bond of only $5,000, if such court(s) require(s) one).

---

10   Notably, Plaintiff does not identify any authority suggesting that a forum-selection clause referencing "exclusive" jurisdiction nonetheless qualifies as permissive. (See id.)

19

Moreover, this understanding of Section 12.03(b) makes sense in light of the Franchise Agreement's overarching "Dispute Resolution Procedures" (Docket Entry 4-1 at 34 (all-cap font omitted)).  (See id. at 34-37.)  The Franchise Agreement "subject[s] to the alternative dispute resolution provisions set forth in Section 12.02" any claim or controversy regarding the Franchise Agreement, except (i) for "actions by Franchisor to collect sums due and payable by Franchisee under th[e] Agreement" and (ii) "as specifically modified by Sections 12.02 and 12.03." (Id. at 34.)  Section 12.02 generally requires that the parties first "attempt to settle [a] dispute in good faith" before submitting any unresolved disputes to "non-binding mediation." (Id. at 34-35.)  After such mediation, the parties can pursue litigation, waiving their rights to a jury trial, solely "in the courts identified in Section 12.02(f)" (id. at 35), a provision that mirrors Section 12.03(b) in relevant part (see id. at 36-37). As Section 12.02(c) makes clear, only those parties who comply with Section 12.02's dispute resolution process "[are] permitted to commence legal proceedings."  (Id. at 35.)

However, in Section 12.02(d), "[t]he parties . . . agree that notwithstanding, and in addition to, the rights and remedies available []under [the Agreement]," each party "reserves the right to seek and obtain temporary restraining orders or other emergency temporary or preliminary equitable injunctive relief from the

20

<u>courts of the state of Alabama or the federal courts situated in</u> <u>the Northeastern District of Alabama</u>" either "to preserve the *status quo* by enjoining or restraining a party []to [the Agreement] pending mediation"[11] or "to compel mediation." (<u>Id.</u> at 36 (emphasis added); <u>see also id.</u> ("[T]he parties hereto acknowledge and agree to the right to seek such relief.").)  Reiterating the limitation to the specified Alabama courts, in Section 12.02(f) each party "irrevocably consents and submits to the <u>exclusive</u> personal jurisdiction of United States District Court for the Northeastern District of Alabama and the courts of the state of Alabama over any suit or action [(i)] <u>to compel mediation</u> in accordance with the provisions of this Section 12" or (ii) "brought <u>following</u> <u>unsuccessful mediation</u> as provided in Section 12.02(b), and irrevocably agrees that <u>venue is proper in such courts</u> for any such suit or action and that all claims with respect thereto may be

---

    11  "A preliminary injunction may be characterized as being either prohibitory or mandatory." <u>League of Women Voters of N.C.</u> <u>v. North Carolina</u>, 769 F.3d 224, 235 (4th Cir. 2014).  "Whereas mandatory injunctions alter the status quo, prohibitory injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." <u>Id.</u> at 236 (internal quotation marks omitted).  The United States Court of Appeals for the Fourth Circuit "ha[s] defined the status quo for this purpose to be the last uncontested status between the parties which preceded the controversy." <u>Id.</u> (internal quotation marks omitted).  "To be sure, it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions, but . . . such an injunction restores, rather than disturbs, the status quo ante." <u>Id.</u> (brackets and internal quotation marks omitted) (ellipsis in original).

heard and determined in <u>either such court</u>."   (<u>Id.</u> (emphasis added).)

As for the reserved right to pursue injunctive relief, Section 12.03 addresses various issues associated with obtaining such relief.[12]  First, Section 12.03(a) provides that, "without the need to post a bond" or, if the court requires one, limiting any such bond to $5,000, the Franchisor can pursue injunctive or extraordinary relief against the Franchisee regarding (i) the WIN Home Inspection Brands and (ii) the Agreement's noncompetition provision.  (<u>Id.</u>)[13]  The remainder of that provision focuses on WIN Home Inspection Brands, including the parties' covenant regarding injunctive relief to prevent irreparable harm from misuse thereof:

> Franchisee acknowledges that it is one of a number of licensed franchisees using Franchisor's WIN Home Inspection Brands and that failure on its part to comply fully with any of the terms of this Agreement respecting use of the WIN Home Inspection Brands could cause irreparable damage to Franchisor or other licensed franchisees of Franchisor.  Therefore, Franchisor shall have the immediate right to seek a preliminary order or injunction prohibiting the use or display of the WIN Home Inspection Brands during the pendency of all mediation or

---

12   To obtain a preliminary injunction, plaintiffs "must demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest." <u>League of Women Voters</u>, 769 F.3d at 236.

13   Under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

other proceedings.  This covenant shall be independent, severable and enforceable notwithstanding any other rights or remedies that Franchisor may have.

(Id. at 36-37.)

In addition to waiving any jury right, Section 12.03(c) establishes the parties' agreement regarding the existence of irreparable harm for violation of the noncompetition provisions and/or misuse of the WIN Home Inspection Brands, even if the Franchisor seeks damages as well as injunctive relief for such violations:[14]

> The parties acknowledge and agree that the rights of WIN Home Inspection Brands and the WIN Home Inspection System and the enforcement of the in-term and post-term noncompetition agreements of Franchisee are of a specialized and unique character and that immediate and irreparable damage will result to Franchisor if Franchisee fails or refuses to perform its obligations under this Agreement and, notwithstanding any election by Franchisor to claim damages from Franchisee as a result of any such failure or refusal, Franchisor may, in addition to any other remedies and damages available, seek an injunction in a court of competent jurisdiction to restrain any such failure or refusal.

(Id. at 37.)

---

14 "Generally, irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th Cir. 1994) (internal quotation marks omitted), abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008). "Thus, when the record indicates that [the] plaintiff's loss is a matter of simple mathematic calculation, a plaintiff fails to establish irreparable injury for preliminary injunction purposes." Id. at 551-52 (brackets and internal quotation marks omitted). "However, when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." Id. at 552.

Finally, in Section 12.03(b), each party "irrevocably consents and submits to the <u>exclusive</u> personal jurisdiction of United States District Court for the Northeastern District of Alabama and the courts of the state of Alabama over any suit or action brought as permitted by the provisions of this Section 12.03." (<u>Id.</u> (emphasis added).)   The parties also "irrevocably agree[] that venue is proper in such courts for any such suit or action and that all claims with respect thereto may be heard and determined in <u>either</u> such court." (<u>Id.</u> (emphasis added).)

In sum, the Franchise Agreement repeatedly reiterates the parties' agreement to pursue litigation only in Alabama state courts and/or a particular Alabama federal court.   Accordingly, "discern[ing]" "the intent of the contracting parties . . . from the whole of the contract" (Docket Entry 21 at 12 (internal quotation marks omitted)) confirms the mandatory nature of Section 12.03(b)'s forum-selection clause.

Alternatively, to the extent ambiguity exists between the Franchise Agreement's references to (i) "reserv[ing] the right to seek . . . [preliminary] injunctive relief from the courts of the state of Alabama or the federal courts situated in the Northeastern District of Alabama," (ii) "not limit[ing] Franchisor from bringing any action in any court of competent jurisdiction for injunctive [relief]," and (iii) the parties' "submi[ssion] to the exclusive personal jurisdiction of United States District Court for the

24

Northeastern District of Alabama and the courts of the state of Alabama" (Docket Entry 4-1 at 36-37), the Court should resolve that ambiguity by deeming the forum-selection clauses mandatory.  Under Alabama law (see id. at 44), "[a]ll the provisions of the contract must be construed together so as to give harmonious operation to each of them, so far as their language will reasonably permit." City of Fairhope v. Town of Daphne, 208 So. 2d 917, 924 (Ala. Sup. Ct. 1968).  The foregoing analysis reflects such an approach.

"Additionally, if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed." Homes of Legend, 776 So. 2d at 746 (internal quotation marks omitted).  As noted above, Sections 12.01 and 12.02 generally require prelitigation mediation and mandate that any litigation — including for the reserved right to seek injunctive relief pending mediation or to compel mediation — occur in a specific Alabama federal court or any Alabama state court.  (See Docket Entry 4-1 at 34-36.)  Especially given that Section 12.03(b) mirrors Section 12.02(f) (see id. at 36-37), Section 12.03(a)'s reference to pursuing injunctive relief "in any court of competent jurisdiction" (id. at 36) does not "plainly express" "an intention to . . . qualify" the Agreement's prior provisions regarding the permissible locations for pursuing injunctive relief.  Further, to the extent any ambiguity remains,

"under the rule of *contra proferentem*, any ambiguity must be construed against [Plaintiff as the successor to] the drafter of the contract," <u>Homes of Legend</u>, 776 So. 2d at 746.

In any event, it appears that the mandatory forum-selection clause found in Section 12.02(d) applies to this action. (<u>See</u> Docket Entry 4-1 at 36.) Plaintiff seeks an injunction, inter alia, (i) prohibiting Defendants "from further disclosing or using WIN's Confidential Information and trade secrets" and (ii) requiring them to "transfer to WIN all telephone numbers, domain names, and other social media accounts used by Strout Holdings and the Strouts in connection with the WIN Home Inspection System." (Docket Entry 3 at 5.) Section 12.03(a) authorizes the Franchisor to pursue injunctive relief only to compel compliance with the Franchisee's obligations "(i) respecting the use or display of the WIN Home Inspection Brands or to otherwise protect the WIN Home Inspection Brands; and (ii) respecting the in-term and post-term non-competition provisions of this Agreement." (Docket Entry 4-1 at 36.) To the extent Plaintiff seeks injunctive relief beyond the parameters of Section 12.03(a), Section 12.02(d) applies and requires pursuit of such relief in "the courts of the state of Alabama or the federal courts situated in the Northeastern District of Alabama." (<u>Id.</u>)

Accordingly, whether under Section 12.03(b) or Section 12.02(d), a mandatory forum-selection clause applies to this

action.   See, e.g., Albemarle Corp., 628 F.3d at 650 ("When construing forum selection clauses, federal courts have found dispositive the particular language of the clause and whether it authorizes another forum as an *alternative* to the forum of the litigation or whether it makes the designated forum *exclusive*." (emphasis in original)).   Plaintiff maintains, however, that "enforcing [the forum-selection clause] would be unreasonable." (Docket Entry 21 at 13; see id. at 13-15.)   Plaintiff's arguments in this regard do not carry its "heavy burden of showing that enforcing the forum selection clause would be unreasonable," Waycaster Tire Serv., Inc. v. United Cmty. Bank, No. 1:22cv269, 2023 WL 2672825, at *3 (W.D.N.C. Mar. 28, 2023).

To begin, Plaintiff contends that "WIN could not have sued True North in Alabama, where it has no minimum contacts or prior express consent, so the Court may not transfer this action there." (Docket Entry 21 at 14; see also id. ("True North disputes that it is subject to the Franchise Agreement's terms, although it now moves to enforce them, which further shows its continued unjust enrichment." (citations omitted)).)   All four Defendants moved to transfer this action to the Northern District of Alabama pursuant to Section 1404(a).   (See Docket Entry 19 at 1-2.)   In so doing, they all consented to the Northern District of Alabama's exercise of jurisdiction over them, waiving any arguments they possessed against litigating this action in that court.   See, e.g., Baldwin

v. Knauf Gips KG, Civ. Action No. 22-395, 2022 WL 19033154, at *2-4
(S.D. Tex. June 24, 2022) (denying motion to dismiss for lack of
personal jurisdiction, rejecting contention that transferee court
lacks jurisdiction to resolve claims where the defendants sought
Section 1404(a) transfer and original court granted that request,
and explaining that "[t]he parties consented to the transfer and
therefore to this [c]ourt's exercise of jurisdiction over them");
ECB USA, Inc. v. Savencia, S.A., Civ. Action No. 19-731, 2020 WL
11762200, at *6-9 (D. Del. July 10, 2020) (finding that the
defendant waived personal jurisdiction objection and consented to
jurisdiction in transferee court by joining Section 1404(a)
motion), recommendation adopted, Civ. No. 19-731, 2020 WL 5369076
(D. Del. Sept. 8, 2020) ("By consenting to transfer under Section
1404(a), a defendant waives any argument that the transferee
district is not one where the action might have been brought and,
therefore, also impliedly waives any argument that the transferee
district does not have personal jurisdiction over the defendant."
(internal quotation marks omitted)); see also, e.g., Baldwin, 2022
WL 19033154, at *5 ("[The d]efendants cite no case whereby a
defendant consented to a § 1404(a) transfer, and then later
successfully challenged the transferee court's exercise of personal
jurisdiction. Unsurprisingly, the [c]ourt has found none. Any
other result would foster gamesmanship, delay, and waste of
judicial resources."). Thus, even if Plaintiff could not have sued

all Defendants in the Northern District of Alabama originally, through the instant Motion, "all [Defendants now] have consented," 28 U.S.C. § 1404(a), permitting transfer, see id.

Next, Plaintiff maintains that North Carolina's "strong public policy against forum-selection clauses," expressed in North Carolina General Statute Section 22B-3, weighs against enforcement of the Agreement's forum-selection clause. (Docket Entry 21 at 14; see also id. at 15.)  As an initial matter, it remains unclear whether Section 22B-3 even applies to this action, given the Agreement's provision "deem[ing it] a contract made in the state of Alabama" (Docket Entry 4-1 at 45 (all-cap font omitted)).  See N.C. Gen. Stat. § 22B-3 ("Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." (emphasis added)).  Moreover, even assuming its applicability, "the potentially persuasive value of § 22B-3, as an expression of North Carolina's policy concerning forum-selection clauses, is just one factor in this Court's analysis, which is governed by federal law, not state law."  Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG, 26 F. Supp. 3d 496, 509 (M.D.N.C. 2014) (Beaty, J.) (brackets and internal quotation marks omitted); see also Waycaster Tire, 2023 WL 2672825, at *3 ("This [c]ourt has made

29

it clear that this statute is only one of many factors to consider when a court evaluates the reasonableness of a forum selection clause.") (collecting cases).  In addition, the Supreme Court has rejected the "'parochial concept' that 'notwithstanding solemn contracts . . . all disputes must be resolved under [specific American] laws and in [specific American] courts.'"  <u>Allen v. Lloyd's of London</u>, 94 F.3d 923, 928 (4th Cir. 1996) (ellipsis in original) (quoting <u>Bremen</u>, 407 U.S. at 9).

As the United States Court of Appeals for the Fourth Circuit has explained in rejecting a similar argument regarding a South Carolina statute disfavoring forum-selection clauses:

> [S]tate reluctance to recognize and enforce forum selection clauses was specifically addressed and countered by the Supreme Court's holding in *The Bremen*. In *The Bremen*, the Court acknowledged that "many courts, federal and state, have declined to enforce forum selection clauses on the ground that they were 'contrary to public policy' or that their effect was to 'oust the jurisdiction' of the court."  407 U.S. at 9.  But it rejected that rationale, noting that these courts' approach was based on the "provincial attitude regarding the fairness of other tribunals."  *Id.* at 12.  The [Supreme] Court thus held that, contrary to judicial disfavor of forum selection clauses such as that manifested in the South Carolina statute, in federal court, forum selection clauses enjoy a presumption of enforceability.

<u>Albemarle Corp.</u>, 628 F.3d at 652 (brackets and parallel citations omitted).  Further,

> it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in *The Bremen*.  *The Bremen* would have little effect if states could effectively override the decision by expressing disagreement with the decision's rationale.  Classifying

> South Carolina's statute as manifesting a strong public
> policy within *The Bremen*'s reasoning would allow the very
> "provincial attitude" rejected by *The Bremen* to override
> the federal policy of favoring a contractual choice of
> forum.

Id.

In other words, "a court cannot observe the Supreme Court's pronouncement that state public policies disfavoring forum-selection clauses do not invalidate such clauses, while at the same time holding that such a policy renders a clause at issue *per se* unreasonable and thus unenforceable." Turfworthy, 26 F. Supp. 3d at 509 (brackets and internal quotation marks omitted). Accordingly, the existence of North Carolina General Statute Section 22B-3 does not, by itself, render unreasonable enforcement of the Agreement's forum-selection clause. See, e.g., Waycaster Tire, 2023 WL 2672825, at *3 (granting transfer request notwithstanding existence of said statute because "[the p]laintiff has not met the heavy burden of showing that enforcing the forum selection clause would be unreasonable").

As a final matter, Plaintiff argues:

> All considerations weigh against transferring this
> action to Alabama, where no party resides, no witnesses
> or evidence are located, and no conduct giving rise to
> WIN's claims occurred. Defendants are "based in North
> Carolina," which is why WIN "chose this logical forum to
> litigate the instant dispute." This action has no
> Alabama connection, and it would be unreasonable to
> transfer it there, which would only delay and obstruct
> WIN's complete and efficient relief.

(Docket Entry 21 at 15 (citations omitted).)  These arguments do not suffice to meet Plaintiff's "heavy burden," Waycaster Tire, 2023 WL 2672825, at *3.  For one, the cited "considerations" reflect primarily private interests that the Court cannot consider under Section 1404(a).  See, e.g., Atlantic Marine, 571 U.S. at 63 n.6 ("Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." (internal quotation marks omitted)); see also id. at 64 (explaining that "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," and instead "must deem the private-interest factors to weigh entirely in favor of the preselected forum").

Moreover, although Defendants' alleged violations of Plaintiff's rights arose in North Carolina (see generally Docket Entry 1), Alabama law applies to multiple claims in this action (see, e.g., Docket Entry 1 at 22-25 (asserting breach of contract claims regarding Franchise Agreement); Docket Entry 4-1 at 44 (providing that, with exception of Lanham Act claims, "[a]ll . . . issues involving th[e Franchise] Agreement and the legal relations among the parties [t]hereto shall be governed by and construed in

accordance with the laws of the State of Alabama"); <u>see also, e.g.,</u> Docket Entry 1 at 25 (relying, in part, on "Alabama Trade Secrets Act" for "Trade Secret Misappropriation" claim against "All Defendants" (emphasis omitted))).   Alabama courts' greater familiarity with Alabama law weighs in favor of such transfer. <u>See, e.g.,</u> <u>Atlantic Marine</u>, 571 U.S. at 63 n.6 ("Public-interest factors may include . . . the interest in having the trial of a diversity case in a forum that is at home with the law." (internal quotation marks omitted).)[15]

Lastly, the record provides some support for Plaintiff's contention that "[t]he only reason Defendants want the Court to transfer this case is to cause injustice, inefficiency, and delay." (Docket Entry 21 at 13 ("No parties reside or maintain a principal place of business in Alabama.   There are no witnesses or evidence located in Alabama.   Nothing related to Defendants' conduct happened in Alabama.   The only reason Defendants want the Court to transfer this case is to cause injustice, inefficiency, and delay."); <u>accord</u> <u>id.</u> at 15.)   As Plaintiff emphasizes, Defendants all reside in North Carolina and the disputed conduct likewise occurred in North Carolina.   (<u>See, e.g.,</u> Docket Entry 1.) Accordingly, this Court remains a significantly more convenient

---

15  The Complaint asserts both diversity and federal-question jurisdiction.   (Docket Entry 1 at 3.)

location for the parties, especially Defendants,[16] to litigate this action than anywhere in Alabama.

Furthermore, Defendants waited until after briefing concluded on the Preliminary Injunction Motion to seek to transfer this action, in contrast to the merits-based dismissal arguments that they raised in both opposing the Preliminary Injunction Motion and in seeking dismissal of Plaintiff's claims through the instant Motion. (See Docket Entries 15 to 15-2, 19, 20, 22.) In addition, for reasons previously discussed, Defendants advanced patently meritless Rule 12(b)(3) dismissal arguments in connection with the instant the Motion, wasting both the Court's and the parties' resources. Nevertheless, Defendants presented their joint Section 1404(a) transfer request on their deadline for responding to the Complaint. (See, e.g., Docket Entry 8 at 1; see also Docket Entry 19 at 2.) This situation thus differs from "the rare and exceptional case in which, ignoring any of [the p]laintiff's private interests and choice of forum, . . . the public factors do not support transfer of the claims against [a defendant seeking Section 1404(a) transfer]," True Homes LLC v. Clayton Homes, Inc., No. 3:18cv345, 2020 WL 4432849, at *4 (W.D.N.C. July 31, 2020). See, e.g., id. ("Given the particular circumstances of this action, including that [the requesting defendant] is a related party to all

---

16  Plaintiff resides in neither North Carolina nor Alabama. (Docket Entry 1 at 2.)

the remaining defendants and the case is nearly over, the [c]ourt will exercise its discretion not to burden our sister court or the fine people of [the requested transfer state] with this matter, which should be concluded in this [c]ourt.").

In sum, Plaintiff has not met its "heavy burden of," <u>Bremen</u>, 407 U.S. at 19, "clear[ly] showing that the[ Agreement's forum-selection clause is] unreasonable under the circumstances," <u>Allen</u>, 94 F.3d at 928.  The Court should therefore grant Defendants' Section 1404(a) request to transfer this action to the Northern District of Alabama.

<u>**CONCLUSION**</u>

Defendants' requests for Rule 12(b)(3) dismissal and attorneys' fees lack merit.  However, the Franchise Agreement contains mandatory forum-selection clauses, warranting Section 1404(a) transfer of this action to the Northern District of Alabama.

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 19) be granted in part and denied in part as follows:  the Rule 12(b)(3) dismissal request and request for attorneys' fees be denied, the Section 1404(a) request to transfer to the Northern

District of Alabama be granted, and the instant Motion be otherwise denied without prejudice to prompt refiling after transfer.

This 29th day of July, 2024.

                                   /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**